UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

NATHANIEL JOHNSON,  )
    #927305 )
     )
    Plaintiff, )   2:11-cv-00291-JCM (CWH)
     )
vs. )
     )   **ORDER**
CHERYL, *et al.*, )
     )
    Defendants. )
     /

Presently before the court is defendants Melody Molinara's and Raymond Mondora's motion for summary judgment. (Doc. # 165). Plaintiff Nathaniel Johnson has filed a response (doc. # 167) and defendants have filed a reply (doc. # 168).

**I.   Background**

This matter arises out of plaintiff's arrest and pre-trial detention at the Clark County Detention Center ("CCDC").

Defendant Mondora is a medical doctor employed by NaphCare, Inc., and contracted by the CCDC. Defendant Molinaro is a registered nurse and the correctional health services administrator at the CCDC, and is also employed by NaphCare.

. . .

On December 24, 2010, plaintiff was arrested on a warrant and taken to the CCDC for holding. At plaintiff's medical screening a nurse requested that plaintiff have a medical evaluation relating to an injury to his pinky finger. (Doc. # 167-2). Plaintiff was then transferred to University Medical Center ("UMC") where he received an x-ray which showed he had a dislocated finger. (Doc. # 165 at p. 3; Doc. # 167 at p. 4). The finger had been dislocated as a result of a fight plaintiff was involved in somewhere between two weeks to two months prior to his arrest. (Doc. # 165 at p. 3).

Plaintiff alleges that at UMC he was recommended to schedule another consultation the following week and that surgical intervention would likely be required to repair his dislocated finger. (Doc. # 167 at p. 5). Plaintiff alleges that the surgery was time-sensitive in order to prevent irreversible damage to his finger. (Doc. # 167 at p. 2). However, plaintiff did not see Dr. Jones (who had recommended the consultation) until Jan. 26, 2011, thirty-three days after the initial recommendation at UMC. (Doc. # 165 at p. 7; Doc. # 167 at p. 7).

Plaintiff alleges that at CCDC he informed both defendant Molinora (a treating nurse) and Mondora (a treating doctor) about the condition of his pinky finger. (Doc. # 159 at p. 2). According to plaintiff, Molinora and Mondora either ignored or purposefully prevented plaintiff from receiving treatment, including surgery, on his pinky. (Doc. # 159 at p. 2).

Defendant, Dr. Mondora, met with plaintiff on Jan. 4, 2011, had plaintiff sign a release on Jan. 5, 2011, and met with plaintiff again on Jan. 12, 2011, before referring him to be seen by Dr. Jones. (Doc. # 165 at p. 5-6). After plaintiff met with Dr. Jones on Jan. 26, 2011, Dr. Mondora approved the surgery on Feb. 2, 2011. (Doc. # 165 at p. 7).

Plaintiff then alleges that defendant Molinaro was aware of plaintiff's requests to proceed with the surgery. (Doc. # 167 at p. 9). Nurse Molinaro spoke with plaintiff several times throughout February of 2011, regarding his inability to secure funding for the surgery. (Doc. # 167 at p. 9). Plaintiff alleges that Molinaro was non-responsive about what was needed to get the surgery done in a timely manner, and would schedule the surgery only after plaintiff personally secured funding. (Doc. # 167 at p. 8-9).

1    The amended complaint contains a cause of action against defendants Molinara and Mondora in both their individual and their official capacities, alleging violations of plaintiff's Fourteenth Amendment rights brought pursuant to 42 U.S.C. § 1983. (Doc. # 159).

**II.    Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  Discussion

As an initial matter, the court acknowledges that plaintiff's exhibits 1, 5, 10, and 15 lack executed certificates from the deponent and/or the court reporter. (Doc. # 167-1, 5, 10, 15). A trial court may not consider unauthenticated documents when ruling on a motion for summary judgment. *Orr v. Bank of America*, 854 F.3d 764, 773 (9th Cir. 2002). Therefore, the court was not able to consider the four depositions that plaintiff offered to the court in his response, beyond what excerpts defendants offered of the same depositions.

"The test for deliberate indifference consists of two parts." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal citations and quotations omitted). "Second, the plaintiff must show that the defendant's response to the need was deliberately indifferent." *Id.*

"This second prong–defendant's response to the need was deliberately indifferent–is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and

(b) harm caused by the indifference." *Id.* at 1096 (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Indifference 'may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (*quoting Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988)).

  *a.* *Individual Capacity*

  Suits against individuals in their individual capacity "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To establish individual liability, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Id.* at 166.

  To maintain a 42 U.S.C. § 1983 claim against defendants in their individual capacity, plaintiff must establish that defendants were deliberately indifferent to plaintiff's medical needs. Deliberate indifference requires that plaintiff establish that defendants knew of, and disregarded, an excessive risk to plaintiff's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Such a standard requires more than medical malpractice or even gross negligence. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

  Plaintiff alleges that both Mondora and Molinaro were deliberately indifferent to plaintiff's medical needs. (Doc. # 167 at p. 1). The parties dispute whether plaintiff's dislocated pinky finger was a "serious medical need." (Doc. # 167 at p. 11; Doc. # 168 at p. 13).

  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds). A serious medical need may also be established by: (1) "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment,"(2) "a medical condition that significantly affects an individual's daily activities," or (3) "chronic and substantial pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *McGuckin* 974 F.2d at 1059.

  Presently a genuine issue exists as to whether plaintiffs injury was "serious." Defendants argue that plaintiff had not sought medical attention prior to his arrest (doc. # 165 at p. 12), and that doctors

5

at Nevada's Department of Corrections did not find the dislocated pinky notable when he was transferred in November 2011 (doc. # 168 at p. 13). However, plaintiff argues that when he was arrested, his injury was notable enough that he was not admitted to CCDC until after he was examined. (Doc. # 167 at p. 12). When examined, the doctors at UMC were concerned enough to contact Dr. Jones (a hand surgeon) for an opinion. (Doc. # 167 at p. 12). The plaintiff was advised that the injury would "likely require surgical intervention." (Doc. # 167 at p. 5).

Here, plaintiff has sufficiently shown that the claimed factual dispute requires a judge or jury to resolve the differing versions of the truth at trial.

The parties also dispute whether defendant's response to the alleged serious injury was deliberately indifferent. Defendants argue that Dr. Mondora authorized the consultation with Dr. Jones promptly and, following the consultation, authorized the surgery. (Doc. # 165 at p. 18-19). Plaintiff argues that the three week delay between the appointments with Dr. Mondora and Dr. Jones is evidence of purposeful delay or deliberate indifference on the part of Dr. Mondora. (Doc. # 167 at p. 7). Plaintiff argues that defendants should have known of the medical necessity and urgency of the surgery because UMC had directed the escorting officer to inform CCDC of Dr. Jones' request for a follow up appointment within seven days. (Doc. # 167 at p. 5).

Plaintiff has shown enough to establish a genuine material issue exists as to whether defendant Mondora acted with deliberate indifference to plaintiff's injury.

With regards to defendant Molinaro, defendants argue that she never had contact with plaintiff before Feb. 8, 2011. (Doc. # 165 at p. 19). Instead, defendants allege she assisted plaintiff in determining what was needed to proceed with the surgery. (Doc. # 165 at p. 20). Plaintiff has responded that Molinaro was aware of his continued grievances about his inability to get the surgery scheduled. (Doc. # 167 at p. 8). Plaintiff also alleges that Molinaro erected a financial barrier to his receiving the surgery, and that she should have scheduled the surgery without requiring payment in order to prevent further damage to the plaintiff's hand. (Doc. # 167 at p. 18). Defendants have noted that plaintiff was approved to receive benefits through Clark County Social Services, (doc. # 165 at p. 8), but argue that Clark

County Social Services would not pay Dr. Jones (doc. # 165 at p. 8). Defendants only cite to Dr. Jones' deposition taken in 2013, and do not mention whether Molinaro attempted to use plaintiff's benefits to schedule the surgery. Plaintiff responds that CCDC has the right to seek reimbursement from prisoners for medical expenses, and so Molinaro's refusal to procure surgery for plaintiff and request reimbursement later show deliberate indifference. (Doc. # 167 at p. 20); (Doc. # 165-13 at p. A-2).

Therefore, plaintiff has shown enough to establish a genuine material issue exists as to whether defendant Molinaro acted with deliberate indifference to plaintiff's injury.

The parties also dispute whether the indifference caused harm. Defendants argue that plaintiff's dislocated finger does not prevent him from carrying out his day-to-day activities and that plaintiff still could have received the surgery as of July 2013. (Doc. # 168 at p. 13-14). Plaintiff argues that his dislocated finger has increased the difficulty of doing the job he secured after being released from custody. (Doc. # 167 at p. 10). Plaintiff also argues that the wait for surgery risked further complications and diminished his quality of life. (Doc. # 167 at p. 12).[1] In Dr. Jones' deposition excerpts, which the defendants have provided authenticated copies of, he noted that the longer a finger is dislocated the more likely it is to have permanent damage. (Doc. # 165-8 at p. 42:23-25). Additionally, the delay between Dec. 24 and Jan. 26 increased the risk of complications for the plaintiff. (Doc. # 165-8 at p. 43:22-44:11).

Plaintiff has shown enough to establish a genuine material issue for a judge or jury to decide at trial regarding whether the alleged indifference caused harm.

Defendant's motion for summary judgment with respect to plaintiff's claims against Molinaro and Mondora in their individual capacities will be denied.

    b.    *Official Capacity*

Suits against an individual in an official capacity represent a way of pleading an action against an entity of which an officer is an agent. *Graham*, 473 U.S. at 165. An official capacity action requires

---

[1] While the court may not consider the deposition portions cited by plaintiff, as discussed above, the defendant provided excerpts that the court may consider which supported the same allegations.

a showing that the entity itself is a "moving force" behind a deprivation of federal rights. *Id.* at 166. An entity's policy or custom must have been involved in the deprivation of the federal right. *Id.* "A direct causal link between a[n entity's] policy or custom and the alleged constitutional deprivation must exist to impose liability on the [entity]." *Tate v. Lau* 865 F.Supp. 681, 689 (D. Nev. 1994).

Defendants argue that Dr. Mondora and Nurse Molinaro were not officials who made the policy decisions or customs that allegedly deprived plaintiff of his rights. (Doc. # 67 at p. 14-15). However, in order to be found liable in an official capacity, the officials do not need to have been the ones who enacted the policy, instead the actions the officials took may have been as a result of the policies of the entity. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978).

Therefore, if plaintiff can show that the alleged constitutional violations were a result of an official policy or custom, the suit against defendants in their official capacities may proceed. Defendants argue that plaintiff can cite to no such policies which violated plaintiff's fourteenth amendment rights. (Doc. # 165 at p. 16; Doc. # 168 at p. 16-17). Plaintiff responds by pointing to the "Contract for Health Care Services for the Clark County, Nevada Detention Center" (doc. # 165-13) as the official policy that led to defendants' violations of plaintiff's rights. (Doc. # 167 at p. 19). Plaintiff alleges that because the contract differentiates "pre-existing conditions" from other conditions, it calls for an unconstitutional treatment of some incarcerated individuals. (Doc. # 167 at p. 19). Defendant responds that the contract is in line with NRS § 211.140(5)(b) and that plaintiff cannot make any claim that the contract and statute are unconstitutional. (Doc. # 168 at p. 17).

Plaintiff has not shown a genuine material issue exists regarding whether an official policy or custom was the moving force behind defendants alleged violation of plaintiff's rights. The contract that plaintiff cites appears on its face to establish that NaphCare had the right to seek reimbursement for the costs of treatment for pre-existing injuries. (Doc. # 165-13). The contract does not appear to create an official policy of denying access to surgery based on an individual's ability to pay. Instead, the contract appears to allow plaintiff to receive appropriate treatment promptly, and authorizes NaphCare to later

8

seek reimbursement from the plaintiff.

Therefore, while plaintiff has provided evidence that a genuine issue exists as to whether his rights were violated, he has not provided evidence that his rights were violated as a result of any official policies or customs attributable to the defendant. *Monell*, 436 U.S. at 690.

Defendant's motion for summary judgment with respect to plaintiff's official capacity claims therefore will be granted.

## IV.  Conclusion

The court concludes that there are triable issues of material fact in regards to the plaintiff's individual capacity claims. Defendant's motion for summary judgment is denied on those claims.

Conversely, the court finds that there are no triable issues of fact with respect to the plaintiff's official capacity claims. Summary judgment on those claims is entered in favor of defendants.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (doc. # 165) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

DATED May 30, 2014.

_____
UNITED STATES DISTRICT JUDGE